IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JON1 UTAUS-BB DOE, AND § | |
| JON4 UTAUS-SA DOE § | |
| PLAINTIFFS, § | |
| V. § | CAUSE NO. 1:19-CV-398-LY |
| § | |
| THE UNIVERSITY OF TEXAS AT § | |
| AUSTIN, § | |
| DEFENDANT. § | |

## ORDER GRANTING MOTION TO DISMISS

Before the court in the above-styled and numbered cause is Defendant the University of Texas at Austin's ("the University") Motion to Dismiss Plaintiffs' Live Complaint filed on June 26, 2019 (Dkt. No. 8). Plaintiffs Jon1 UTAUS-BB Doe and Jon4 UTAUS-SA Doe (together, "Plaintiffs"), both of whom are Texas residents and male undergraduate students at the University, filed this action alleging that the University violated their federal and state-protected rights and that they suffered ongoing economic and emotional harm. Specifically, Plaintiffs allege that they were intentionally targeted by the University and subjected to "draconian" disciplinary policies that disparately impacted male students. According to Plaintiffs, the University's disciplinary policies violated their rights under Title IX of the Education Amendments Act ("Title IX"), Section 1983 of the Civil Rights Act ("Section 1983"), and the Texas Constitution. Plaintiffs further allege that the University breached an educational contract.

In response to Plaintiffs' allegations, the University filed a Motion to Dismiss seeking dismissal of all of Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs filed a Response to Motion to Dismiss on July 16, 2019 (Dkt. No. 9),

to which the University replied on July 23, 2019 (Dkt. No. 10).[1] Having considered the motion, response, reply, and the applicable law, the court will grant the University's motion.

**Background**

Plaintiffs' complaint against the University arises from an accusation of "hazing." According to Plaintiffs, they were informed of the allegations against them and interviewed by personnel from the University's Office of the Dean of Students. Plaintiffs presented their version of events and informed the University that they had acted at the direction and coercion of their fraternity. Ultimately, the University opted to discipline Plaintiffs and placed them on disciplinary probation. In response, Plaintiffs sought to appeal the disciplinary decision to a disciplinary committee within the Office of the Dean of Students and, if necessary, the Office of the President of the University. The University denied Plaintiffs' requests for an appeal. Subsequently, Plaintiffs complied with the terms of their probation and completed an online academic-integrity program. Plaintiffs then sued the University, alleging violations of their rights under Title IX, Section 1983, and Sections 3 and 19 of the Texas Constitution.

**Legal Standard**

**A. Federal Rule of Civil Procedure 12(b)(1)**

The Federal Rules of Civil Procedure allow for the dismissal of a case when the court lacks jurisdiction over the subject matter. FED. R. CIV. P. 12(b)(1). A court should grant a Rule 12(b)(1) motion only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. *See Lane v. Halliburton*, 529 F, 3d 548, 557 (5th Cir. 2008). The party asserting jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In deciding whether the facts establish subject-matter

---

[1] Plaintiffs' live complaint is Plaintiffs' Second-Amended Complaint filed on June 23, 2019 (Dkt. No. 7). For simplicity, the court refers to it as the "complaint."

2

jurisdiction, the court may consider (1) the complaint and (2) "undisputed facts evidenced in the record." *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a party may to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A complaint need not contain detailed factual allegations, but in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). In considering whether this standard is met, however, a court is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To satisfy the requirement of facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements, which do not permit the court to infer more than the mere possibility of misconduct." *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245–46 (5th Cir. 2010).

**Plaintiffs have failed to state a claim against the University under Title IX**

The University contends that Plaintiffs fail to state a claim for recovery under Title IX. Plaintiffs allege that the University's disciplinary policies are selectively enforced to target male students, and that these policies have a disparate impact on male students. Fundamentally, Plaintiffs' Title IX claim boils down to a conclusory statement that the University's student disciplinary policies punish male students with greater frequency and severity, and that the

University selectively enforced these policies against Plaintiffs on the basis of their sex. In reviewing Plaintiffs' factual allegations and supporting authorities, the court concludes that Plaintiffs have failed to state a claim for Title IX discrimination upon which relief can be granted.

In relevant part, Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). As a means of enforcing its mandate, Title IX provides administrative remedies and an implied right of action. *Doe ex rel. Doe v. Dallas ISD*, 220 F.3d 380, 383 (5th Cir. 2000) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979)). Title IX's private right of action is specifically intended to enforce a prohibition on "intentional sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Although the body of law in Title IX actions in the context of disciplinary proceedings is not fully developed, claims challenging a university disciplinary proceeding on grounds of sex-based bias generally fall within two categories: "erroneous outcome" claims and "selective enforcement" claims. *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

### A. Erroneous Outcome

Here, Plaintiffs have not specifically alleged an erroneous-outcome claim against the University. Although the phrase "erroneous outcome" is not present in their complaint, Plaintiffs do make reference to an erroneous-outcome claim in their response to the University's motion to dismiss when they state that "erroneous outcome" is an element of a Title IX claim. However, Plaintiffs fail to allege the first element of an erroneous-outcome claim, namely, that their

disciplinary outcome was erroneous. *See Klocke*, 2019 WL 4263499, at *3. In fact, Plaintiffs' complaint implies that Plaintiffs did commit the acts of which the University accused them, and that they committed the acts at the direction of their fraternity. For this reason, Plaintiffs' erroneous-outcome theory fails.

## B. Selective Enforcement

The gravamen of Plaintiffs' Title IX allegation is that the University selectively enforced its disciplinary policies against them on the basis of their sex. Under a selective-enforcement theory, a plaintiff is required to plead factual allegations that "the decision to initiate the proceeding or that the severity of the penalty was motivated by gender irrespective of the student's guilt or innocence." *Yusuf*, 35 F.3d at 715. Moreover, male plaintiffs must demonstrate selective enforcement by alleging facts that a female student was in sufficiently similar circumstances and that the female student was treated more favorably. *Klocke*, 2019 WL 4263499 at *6; *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019). Thus, selective-enforcement claims are analogous to disparate-treatment claims brought in traditional discrimination cases, such as those brought under Title VII of the Civil Rights Act of 1964, in that they require the identification of a sufficiently-similar comparator. *See* 42 U.S.C. § 2000e-2(a)(1). Indeed, the comparator analysis under Title IX is the same as the analysis in Title VII claims. *See Cantuillo ISD v. Leija*, 101 F.3d 393, 404 (5th Cir. 1996) ("In reviewing claims of sexual discrimination brought under Title IX . . . courts have generally adopted the same legal standards that are applied to such claims under Title VII."). Here, Plaintiffs fail to allege that any individual female student has been treated more favorably under similar circumstances, nor have they alleged more favorable treatment for female students under the "nearly identical" circumstances required by Title VII. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th

5

Cir. 2009). Indeed, Plaintiffs' complaint does not make any reference to a female student who was treated more favorably under sufficiently-similar circumstances. In their response to the University's motion to dismiss, Plaintiffs argue that they refused to refer to any female students in an effort to protect such students' anonymity. This argument is unavailing because it is entirely permissible to specify a comparator under Title VII without identifying the comparator by name, so long as the comparators are identified by protected characteristics. *See generally Santos v. Wincor Nixdorf, Inc.*, No. 1:16-CV-440-RP, 2018 WL 6728483, at *2 (W.D. Tex. Dec. 21, 2018) (unpublished). Plaintiffs' allegations that they were treated differently than similarly-situated female students on the basis of sex are merely conclusory. Therefore, Plaintiffs' selective-enforcement claim fails.

### C. Disparate Impact

Finally, at various points in their complaint, Plaintiffs state that the University's disciplinary policies have a disparate impact on male students. A disparate-impact claim cannot be brought under Title IX, because the Title IX private right of action extends only to intentional discrimination. *Fort v. Dallas ISD*, 82 F.3d 414, 1996 WL 167072 at *4 (5th Cir. Mar. 11, 1996) (unpublished) (Title IX plaintiff must establish intentional discrimination). *See also Sayden v. Greensburg Community Sch. Corp.*, 743 F.3d 569, 583 (7th Cir. 2014) ("The discrimination must also be intentional in order to support a claim for damages under Title IX."). Accordingly, to the extent that Plaintiffs allege a disparate-impact claim under Title IX, the claim fails as a matter of law.

In sum, Plaintiffs have failed to adequately plead a Title IX claim upon which relief can be granted.

**This court lacks subject-matter jurisdiction over Plaintiffs' remaining claims**

The University further contends that Plaintiffs' claims for violations of Section 1983, the Texas Constitution, and breach of an educational contract are barred by the Eleventh Amendment. *See* U.S. Const. amend XI. Plaintiffs seek equitable relief through their Section 1983 and state constitutional claims, and monetary damages through their breach-of-contract claim. Having reviewed the complaint, the undisputed facts, and the applicable law, the court concludes that it lacks subject-matter jurisdiction over Plaintiffs' remaining claims.

Federal courts are courts of limited jurisdiction; absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Generally, Eleventh Amendment sovereign immunity "deprives a federal court of jurisdiction to hear a suit against a state." *Warnock v. Pecos Cnty*, 88 F.3d 341, 342 (5th Cir. 1996). Therefore, when a state agency is a named defendant, the Eleventh Amendment "bars suits for both money damages and injunctive relief unless the state has waived its immunity." *Cozzo v. Tangipahoa Paris Council-President*, 279 F.3d 273, 280–81 (5th Cir. 2002). A state's waiver of immunity, whether it is express or implied, must be unequivocal. *Watson v. Tex.*, 261 F.3d 436, 440–41 (5th Cir. 2001).

The University is a state entity and as such it is entitled to Eleventh Amendment immunity. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Neither congress nor the State of Texas has unequivocally waived the University's claim to sovereign immunity here. As a state entity, the University is not a "person" for the purposes of imposing liability under Section 1983. *See Stotter v. University of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (citing *Will v. Mich. State Dep't of Police*, 491 U.S. 58, 71 n. 10 (1989)). Therefore, Plaintiffs' contention that they are seeking equitable relief under Section 1983 is

7

irrelevant, because "the jurisdictional bar applies regardless of the relief being sought." *Pennhurst State Sch. & Hosp. v Halderman*, 465 U.S. 89, 100 (1984). Consequently, Plaintiffs' Section 1983 claim will be dismissed.

Similarly, the University has not waived its sovereign immunity from Plaintiffs' constitutional claims. Indeed, "the mere fact that Plaintiff's declaratory requests arise from the Texas Constitution does not itself constitute a waiver of immunity." *Banik v. Tamez*, No. 7:16-CV-00462, 2017 WL 2505653, at *26 (S.D. Tex. June 9, 2017). In Texas, constitutional-based waiver is only applicable to Article I, Section 17 of the Texas Constitution, which prohibits the taking, damaging, or destruction of property for public use without adequate compensation. *Id.*; *Idoux v. Lamar Univ. Sys.*, 817 F. Supp. 637, 641 (E.D. Tex. 1993). Here Plaintiffs allege violations of Sections 3 and 19 of the Texas Constitution. Thus, Plaintiffs' claims under the Texas Constitution will also be dismissed for lack of subject-matter jurisdiction.

Finally, Plaintiffs' claim for "breach of Educational Contract" will also be dismissed for lack of subject-matter jurisdiction. The Supreme Court of Texas has made clear that there is but one route to the courthouse for breach-of-contract claims against entities of the State of Texas, "and that route is through the legislature." *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001). Because Plaintiffs' claims would be barred if they were brought in state court, they are likewise barred in federal court, as the University has not unequivocally expressed a waiver of Eleventh Amendment immunity. *Moore v. Univ. Miss. Med. Ctr.*, 719 F. App'x 381, 387–88 (5th Cir. 2018). Plaintiffs' argument that the court can properly exercise supplemental jurisdiction over their breach-of-contract claim is misplaced, because the grant of supplemental jurisdiction does not abrogate Eleventh Amendment immunity. *Raygor v. Regents*

*of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002) ("[W]e hold that [28 U.S.C.] § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants.").

Accordingly, because the court lacks subject-matter jurisdiction over Plaintiffs' remaining claims, they are dismissed pursuant to Rule 12(b)(1).[2]

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Live Complaint (Dkt. No. 8) is **GRANTED** by the court for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Amended Complaint (Dkt. No. 7) is **DISMISSED WITH PREJUDICE** pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

A Final Judgment will be filed subsequently.

SIGNED this 8th day of November, 2019.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

---

[2] In addition to the causes of action discussed above, Plaintiffs seek punitive damages, pre- and post-judgment interest, and attorney's fees as separate "counts" in their complaint rather than requests for relief. Because they are not standalone causes of action, and Plaintiffs have failed to establish that they have a right to recovery in this case, these "counts" will also be dismissed.